# 𝔎𝔦𝔠𝔥𝔪𝔬𝔫𝔡

HARRY KAPLAN AND E. J. WILLETT V. ELLIS P. BLOCK.

November 20, 1944.

Record No. 2838.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Albert V. Bryan* and *Alfred A. Hilton*, for the plaintiffs in error.

*T. Munford Boyd, James H. Simmonds* and *Nathan Patz*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

The Old Dominion Office Building, Incorporated, is a Virginia corporation, chartered in November, 1940, with its principal office in Arlington county. The names and residences of the officers and directors, who, unless sooner changed by the stockholders, were for the first year to manage the affairs of the corporation are as follows:

Harry Kaplan, President and director, Washington, D. C.
Emile Beauvais, Vice-president and director, Washington, D. C.
Ellis P. Block, Secretary and director, Washington, D. C.
Samuel Goldberg, Treasurer and director, Washington, D. C.

Its capital stock was divided into classes A and B. Class B consisted of one hundred twenty (120) shares; it had no voting power but was the only dividend-bearing stock of the corporation. Class A stock consisted of 10 shares with no dividend rights but with sole stock-voting power.

Goldberg seems to have taken no active interest as treasurer and was succeeded by Block, who became treasurer also. Charges were preferred against him and were heard by the board of directors in January, 1943. After due notice, he, dissenting, was removed from office and was succeeded by one Willett.

On March 2, 1943, Block filed a petition for mandamus, in which he asked that Kaplan, president of the corporation, admit him to its office as secretary and treasurer and deliver to him all proper books, papers, etc.

To that petition Kaplan demurred. This demurrer was overruled. Afterwards Kaplan and Willett both filed answers, which in turn were stricken out, and thereupon mandamus issued. This writ seems to have been treated as a proceeding in equity by the court below. In point of fact, it is a command issuing from a common law court of competent jurisdiction. *Board of Supervisors* v. *Combs*, 160 Va. 487, 169 S. E. 589. Its action is based upon these specific charter and by-law provisions:

### Charter provisions:

"Any matter concerning the administration and management of the affairs of the corporation, and the control or regulation thereof, which in the due course of the transaction of the business and affairs of the corporation is determined by the vote of the stockholders entitled to vote by stock, in person or by their proxy shall only be determined by the unanimous vote of the outstanding stock entitled to vote, nor shall any act of the board of directors be binding upon the corporation, or the stockholders, unless ratified by the unanimous vote of all the outstanding stock entitled to vote."

### By-law provisions:

"The Class 'A' common stock shall have the sole voting power, but no act of the stockholders shall be valid or binding upon the corporation or the stockholders unless such Class 'A' stock is voted unanimously, nor shall any act of the board of directors be binding upon the corporation or upon the stockholders unless the acts of the board of directors are ratified by all the holders of the outstanding Class 'A' common stock."

Appellants contend:
"1. The provisions of the charter and by-laws rendering ineffective the removal of the secretary and treasurer by the board of directors until ratified by the vote of all of the outstanding voting stock, were void as contrary to the com-

mon law, the statutes of Virginia and the public policy of the State.

"2. The board of directors possessed the power to remove the secretary and treasurer, and have validly exercised it; but if only the stockholders possessed the power of removal, they have exercised it validly; and in either event the propriety of such action was not reviewable by the court."

In *Sterling* v. *Trust Co.*, 149 Va. 867, 141 S. E. 856, the court said:

"Section 3789 Virginia Code vests all the powers of the corporation in the president and directors as board of directors, and provides that it may consist of three persons, except common carriers," and that *"the board of directors must direct the business and govern the policy and plans of the corporation."* (Court's italics.)

It quoted with approval this from 2 Cook on Corporations (5th Ed.) section 712:

"They (directors) appoint the agents, direct the business, and govern the policy and plans of the corporation. The directors elect the officers, and in this connection it may be added that at common law there is no limit to the number of offices which may be held simultaneously by the same person, provided that neither of them is incompatible with any other. They institute, prosecute, compromise or appeal suits at law and in equity which the corporation brings or has brought against it."

In *Booker* v. *Young*, 12 Gratt. (53 Va.) 303, it was held that the directors of a banking corporation might elect its president and that a majority of its directors might act, provided there was a quorum present.

*Manson* v. *Curtis*, 223 N. Y. 313, 119 N. E. 559, is a case in which all stockholders entered into an argument which conferred upon the plaintiff, who was himself a stockholder, the exclusive management of the corporate business and further agreed:

"That any president of the corporation to be thereafter elected should be only a nominal head as president, and be

no more active in conducting the affairs of the corporation than the then president, Abel I. Culver, had been, and that such president should not change, alter, molest, or interfere with the plaintiff's methods of managing the corporate business affairs nor interfere with plaintiff as such general manager for said one year."

The court held this agreement to be unlawful and in the course of its opinion said:

"Directors are the exclusive, executive representatives of the corporation, and are charged with the administration of its internal affairs and the management and use of its assets. *Pollitz* v. *Wabash R. R. Co.*, 207 N. Y. 113, 100 N. E. 721. Clearly the law does not permit the stockholders to create a sterilized board of directors. Corporations are the creatures of the state, and must comply with the exactions and regulations it imposes."

In *Fells* v. *Katz*, 256 N. Y. 67, 175 N. E. 516, we had a corporation whose stock was held by five individuals. They agreed to elect each of their number as an officer, to hold office for ten years. Fells was elected president but was later discharged for misconduct. The court in the course of its opinion said:

"An agreement among stockholders whereby the directors are bereft of their power to discharge an unfaithful employee of the corporation is illegal as against public policy."

In support of its conclusions, *Manson* v. *Curtis, supra,* is quoted as follows:

"Clearly the law does not permit the stockholders to create a sterilized board of directors."

In *Brindley* v. *Walker*, 221 Pa. 287, 70 A. 794, 23 L. R. A. (N. S.) 1293, it was held that the secretary and treasurer of a corporation were purely ministerial officers and might be discharged by the directors at their pleasure.

These decided cases find support in the views of text-writers generally.

"The directors are not ordinary agents in the immediate control of the stockholders, but the powers of boards of directors are, in a very important sense, original and un-

delegated; the stockholders do not confer, nor can they revoke, those powers or create a sterilized board of directors. Rather, the directors hold their office charged with the duty to act for the corporation according to their best judgment, and in so doing they cannot be controlled in the reasonable exercise and performance of such duty." 13 Am. Jur. 907, sec. 947.

" 'It is of the essence of all elections that the will of the majority, properly expressed, shall govern.' And usually the vote of a majority of those present at a meeting is necessary to elect officers or to decide any question.

"Provided a quorum is present, so that the meeting may be legally held, the vote of a majority of those present is sufficient to elect directors or other officers, or to decide any question, unless there is some express provision to the contrary, although they may not be a majority of all the stockholders or members, nor own a majority of the stock. But a majority of the subscribed capital stock is sometimes required by the statute or charter to constitute a valid election." 3 Fletcher on Corporations, Vol. 3, p. 2762, sec. 1647.

"The right of the majority to rule in the management of the affairs of a private corporation is fully established. They may control the company's business, prescribe its general policy, make themselves its agents, and take reasonable compensation for their services as agents." 2 Cook on Corporations, 6th Ed., p. 1642.

Under general law, directors are charged with the control and management of their corporation. They may appoint officers and agents and may elect the president when the situation demands it; and as incident to this power of appointment, they may discharge those appointed. *Myers* v. *United States*, 272 U. S. 52, 47 S. Ct. 21, 71 L. Ed. 160. And certainly they may discharge those who proved to be unfaithful.

This chartered power is subject to statute law and to the law of the land.

"The provisions of the general law with regard to corporations organized by virtue thereof are as binding upon

it as they would be if written into a special charter; and all by-laws which are inconsistent with the charter of a corporation or with the governing law are void. The principle is fundamental, but a few cases are cited below which illustrate the strictness with which it is applied." *Clark* v. *Wild*, 85 Vt. 212, 81 A. 536, Ann. Cas. 1914C, 661.

Code, section 3789, declares that "there shall be for every corporation a president and directors, who shall be a board to have all things done that are proper to be done by the corporation, except so far as may be otherwise provided by any law of this State, or by any by-law or regulation of the stockholders. There shall also be a secretary, and there may be also one or more assistant secretaries." And that "the directors, and where it is not otherwise provided by law, or by a by-law of the corporation, the president also, shall be elected by the stockholders in meeting. The stockholders in meeting or other appointing power, as the case may be, may remove any director or other officer elected or appointed by them, * * * ."

In the charter is given the names of officers and directors, who, unless sooner changed by the stockholders, were for the first year to manage the affairs of the corporation. This was a temporary arrangement to continue until the corporation found itself.

Code, section 3853, provides:

"The business of every corporation organized under the provisions of this chapter shall be managed by a board of directors of such number, not less than three, as may be prescribed by the certificate of incorporation or the by-laws of the corporation. They shall hold office, unless sooner removed by the stockholders for the term fixed by the certificate of incorporation or by-laws and until their successors are respectively elected and qualified, and a majority of them shall constitute a quorum for the transaction of business."

Code, section 3777, provides that corporations may sue and be sued in any court of law or equity and shall also have power "to appoint such officers and agents as the busi-

ness of the corporation shall, in its opinion, require, and to fix their compensation."

These are among statutory instances of powers given to stockholders:

Sec. 3780. To amend charter—by vote of two-thirds of outstanding stock.

Sec. 3781. To increase or decrease the capital—by vote of two-thirds of outstanding stock.

Sec. 3783. To create a bonded indebtedness—by vote of a majority of the outstanding stock.

Sec. 3810. To dissolve corporation—at the instance of a board of directors by a vote of two-thirds of the outstanding stock.

Sec. 3820a. To dispose of entire assets—by vote of two-thirds of outstanding stock.

None of these can be exercised where unanimity of action is necessary.

Under the charter and by-laws no action of the board of directors which is not approved by the stockholders is effective; and to make bad matters worse, it must not only be approved by them but must be unanimously approved by them. For all practical purposes there might as well be no board at all. A private business corporation without a board of directors is an impossible concept.

Corporations were invented to circumvent the unity required in partnerships. A partner who is unwilling to consent may withdraw from the partnership and dissolve it. This distinction was pointed out by Chancellor Kent as early as 1820, where he said in *Livingstone* v. *Lynch*, 4 Johns. Ch. 573, that the right of the majority to rule is one of the chief differences between corporations and partnerships.

In construing corporate charters, by-laws and powers granted, their validity is determined not by what has been done under them, but also by what may be done. A recalcitrant director who is also a stockholder may embalm his corporation and hold it helpless; it can do none of those things noted as authorized by general law. It cannot sue

and it cannot defend a suit. It cannot be dissolved, and it must remain forever in a state of suspended animation. A treasurer, who chanced to own a share of stock, might pocket its assets and leave his associates without civil remedy. These regulations, if followed out, violate both common and statute law and are suicidal of corporate existence. A board of directors whose every act must be endorsed by every stockholder is no board at all.

Mr. Block contends that these limitations are lawful and on his behalf we are cited to *Farmers' Loan, etc., Co.* v. *Pierson*, 222 N. Y. S. 532, where it is said:

" * * * If the stockholders by charter or by-laws deem any limitation desirable there seems never to have been any reason for denying such right to them. But all doubt upon that score is set at rest by the provision of section 10, subdivision 2 of the General Corporation Law: 'The certificate of incorporation * * * may contain * * * any limitation * * * upon the powers of its directors and stockholders, which does not exempt them from the performance of any obligation or the performance of any duty imposed by law.' "

To the same effect is *Ripin* v. *United States Woven Label Co.*, 205 N. Y. 442, 98 N. E. 855. Various limitations have been sustained.

No one contends that limitations may not be placed upon the power of directors, but they cannot be legislated out of office.

*Union Trust Co.* v. *Carter*, 139 F. 717, placed certain limitations upon the power of stockholders to continue to January 1, 1910, and in the meantime turned the management of the corporation over to its directors.

*Stevens* v. *Davison*, 18 Gratt. (59 Va.) 819, 98 Am. Dec. 692, was a case in which a board of directors was held to have no authority to lease a railway, and it was held also that a by-law which authorized the directors to alter existing by-laws did not authorize them to change limitations placed upon their own power.

Statutes, charters, by-laws, contracts all must pass under this test: Is it lawful to do those things which they purport to permit?

Right after right is violated. No suit can be brought without a dissenter's consent, nor can two-thirds of outstanding stockholders elect to go out of business. Instances might be multiplied.

We have been referred to no authority directly in point and that doubtless because it had not heretofore occurred to any one. To ask that directors be divested of all power and that without the consent of every stockholder no one should have power to do anything is to ask too much.

*Reversed and remanded.*